**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ASHLEY EARLY,

    *Plaintiff,*

 v.

ACE CASH CHECKING, *et al.*,

    *Defendants.*

Civil Action No. 26‑6 (SLS)

Judge Sparkle L. Sooknanan

**<u>MEMORANDUM OPINION</u>**

Ashley Early worked at ACE Cash Express (ACE) for roughly two months before resigning.[1] She brought this lawsuit against her former employer to challenge certain events related to her employment. During her onboarding at ACE, however, Ms. Early electronically signed an arbitration agreement, agreeing to resolve any claims arising from her employment through binding arbitration. Ms. Early now contends that the arbitration agreement is unenforceable and unconscionable. But that agreement contains a clause delegating disputes concerning its formation, validity, or enforceability to arbitration. Thus, the Court must send this dispute to an arbitrator.

**BACKGROUND**

**A. Factual Background**

The Court draws all justifiable inferences in Ms. Early's favor, as the nonmoving party, and accepts her evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *United States ex rel. Milestone Tarant, LLC v. Fed. Ins. Co.*, 672 F. Supp. 2d 92, 96 (D.D.C. 2009).

---

[1] In her filings, Ms. Early identifies the Defendant as ACE Cash Checking. But the correct name of her former employer is Populus Financial Group, Inc., d/b/a ACE Cash Express. The Court deems all references to ACE Cash Checking in Ms. Early's filings to refer to ACE Cash Express.

ACE is a financial services company incorporated in Texas with its principal place of business in Irving, Texas. Notice of Removal ¶ 9, ECF No. 1; Notice of Removal Ex. C, ECF No. 1-4. ACE hired Ms. Early, a Washington, D.C., resident, in October 2025 as a part-time Sales Associate. McWilliams Decl. ¶ 8, ECF No. 6-2. During her onboarding process, ACE presented Ms. Early with a mandatory, electronic arbitration agreement. *Id.* ¶¶ 6, 9; *see* McWilliams Decl. Ex. (Arb. Agreement), ECF No. 6-2.

The agreement directs "any and all claims, disputes, or controversies arising out of or relating in any way to [an] application for employment, [an employee's] employment with ACE, and/or the termination of [an employee's] employment" to mandatory arbitration and selects the American Arbitration Association (AAA) as a default arbitral forum. Arb. Agreement 1. The agreement also delegates to the arbitrator the "authority to resolve any disputes concerning the formation, validity or enforceability of [the] Arbitration Agreement." Arb. Agreement 2. Towards the end of the agreement, there is a "Special Note" emphasizing that the agreement and AAA Rules "are important documents that affect [the signatory's] legal rights." Arb. Agreement 3. The agreement says that signatories "should familiarize [themselves] with and understand [the agreement and rules]" and "may wish to seek legal advice before signing[.]" *Id.* Below the signature lines, there is an opt-out procedure for signatories with a 30-day deadline to deliver written notification of their decision to opt-out of the agreement. *Id.* Ms. Early signed the agreement on October 22, 2025, and there is no evidence in the record of her exercising her right to opt-out within the 30-day window. *Id.*

Ms. Early alleges that during her training, she was "repeated[ly] mistreat[ed] [by] her trainer" who "humiliated [her] in front of customers, spoke to her in a belittling manner, and failed to provide proper guidance." Pl.'s Opp'n 3, ECF No. 11. She also alleges that her manager, Omar

Sneed, failed to sufficiently communicate with her concerning her training schedule and assignments. *Id.* In November 2025, Ms. Early reported her trainer's alleged behavior to ACE's Human Resources Department. Compl. 9, ECF No. 1-2. After making the report, she was removed from ACE's work schedule and Mr. Sneed stopped responding to her messages. Pl.'s Opp'n 3–4. When Ms. Early followed up with Human Resources, she was "told she needed to 'accept feedback.'" Pl.'s Opp'n 4. She was later placed on a new work schedule, Compl. 15, and attended a training completion meeting on December 9, 2025. Not. of Evid. 24, ECF No. 10. Ms. Early claims that at that meeting, ACE Regional Vice President Bee Rowles told her that she overreacted to the situation with Mr. Sneed and needed to learn how to accept feedback. Compl. 15–16. Feeling "targeted, isolated, and retaliated against," Ms. Early submitted her two-week resignation notice that same day. Pl.'s Opp'n 4; McWilliams Decl. ¶ 8.

### B.     Procedural Background

In December 2025, Ms. Early sued ACE and Mr. Sneed in the Superior Court of the District of Columbia alleging claims of constructive discharge, intentional infliction of emotional distress, and retaliation. Compl. 9, 15–16; *see also* Pl.'s Opp'n 5–7. She seeks at least $250,000 in damages. Compl. 9. In January 2026, the Defendants removed the case to this Court on the basis of diversity jurisdiction. Notice of Removal. Ms. Early has since opposed the Defendants' removal. *See* Notice of Removal Opp'n, ECF No. 9; Defs.' Opp'n, ECF No. 13. And the Defendants have filed a Motion to Dismiss or, in the Alternative to Compel Arbitration. Defs.' Mot., ECF No. 6-1. Both motions are fully briefed and ripe for decision. Pl.'s Opp'n; Defs.' Reply, ECF No. 14.[2]

---

[2] Ms. Early filed a Sur-Reply opposing dismissal, ECF No. 15, which the Defendants moved to strike over Ms. Early's opposition. *See* ECF Nos. 16, 18. Because Ms. Early's Sur-Reply does not change the Court's conclusions, the Court denies the Defendants' motion to strike it as moot.

**DISCUSSION**

**A.    Subject Matter Jurisdiction**

Starting with jurisdiction, Ms. Early opposes removal to this Court. *See* Notice of Removal Opp'n. She argues that the Defendants' removal was procedurally defective under 28 U.S.C. § 1446(a), and that her claims, which arise under District of Columbia law, belong in D.C. Superior Court. *Id.* at 2–4. The Court construes Ms. Early's filing as a motion to remand, *see Leitner v. United States*, 679 F. Supp. 2d 37, 40 (D.D.C. 2010) (taking the same approach), and denies it.

There is no procedural defect in the Defendants' removal. The Defendants timely filed their Notice of Removal, which complied with Section 1446 in all respects. *See* Notice of Removal; Notice of Removal Exs. A–C, ECF Nos. 1-2, 1-3, 1-4. And Ms. Early identifies no specific defects in the Notice of Removal.

Removal was also proper. Defendants "in a civil action brought in state court may remove the action to a federal district court if the action is one over which the federal district courts have original jurisdiction—including diversity jurisdiction." *Walker v. 2100 2nd St SW, LLC*, No. 24-cv-677, 2024 WL 3887395, at *2 (D.D.C. Aug. 20, 2024) (cleaned up). Diversity jurisdiction arises (1) when the two parties are "citizens of different states," and (2) the "matter in controversy exceeds the sum or value of $75,000[.]" 28 U.S.C. § 1332. The removing defendant "bears the burden of proving that jurisdiction exists in federal court." *Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008) (cleaned up). Here, the Defendants have met their burden.

As for the first prong, courts use the "domiciles of the parties" to determine citizenship for purposes of diversity. *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). Domicile depends on "physical presence in a state" and "intent to remain there for an unspecified or indefinite period of time." *Id.* Ms. Early is domiciled in Washington, D.C., where she resides.

4

Compl. 9. ACE is a citizen of Texas, where it has its principal place of business and was incorporated. Notice of Removal ¶ 9; Notice of Removal Ex. C; *see also Farar v. Coffield*, No. 17-cv-2072, 2019 WL 329597, at *4 (D.D.C. Jan. 25, 2019) ("To determine the citizenship of a corporate entity, courts look to the corporation's state of incorporation and principal place of business." (citing *Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 906–07 (D.C. Cir. 2006))). And Mr. Sneed is domiciled in the Commonwealth of Virginia. Notice of Removal ¶ 10. Thus, there is complete diversity among the parties in the case.

The second prong is met when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). "[W]hen assessing whether the amount in controversy exceeds $75,000, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Goldman v. Fiat Chrysler Autos. US, LLC*, 211 F. Supp. 3d 322, 325 (D.D.C. 2016) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Ms. Early seeks $250,000 in monetary relief for her claims. Compl. 9. Nothing suggests that she pled that amount in bad faith, so the amount-in-controversy requirement is also satisfied.

Accordingly, the Court has diversity jurisdiction over Ms. Early's claims and must deny her motion to remand the case to D.C. Superior Court.

### B.      Motion to Compel Arbitration

Turning to the Defendants' request to compel arbitration, they argue that Ms. Early agreed to resolve all her claims exclusively before an arbitrator. Defs.' Mot. 5. The Court agrees.[3]

---

[3] Recall that the Defendants moved to dismiss Ms. Early's claims under Rule 12(b)(6) or, in the alternative, to compel arbitration. It is unclear whether this Court could dismiss Ms. Early's claims under Rule 12(b)(6) given the Defendants' alternative request to compel arbitration of those same claims. *See Jin v. Parsons Corp.*, 966 F.3d 821, 827 (D.C. Cir. 2020) ("The arbitrability of a dispute is a 'gateway' issue, meaning that 'a court should address the arbitrability of the plaintiff's claim at the outset of the litigation." (quoting *Reyna v. Int'l Bank of Com.*, 839 F.3d 373, 376, 378 (5th Cir. 2016))); *Kindig v. Whole Foods Mkt. Grp., Inc.*, 811 F. Supp. 2d 410, 415 (D.D.C. 2011)

A motion to compel arbitration is evaluated under the summary-judgment standard prescribed by Federal Rule of Civil Procedure 56. *Aliron Int'l, Inc. v. Cherokee Nation Indus.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (characterizing a motion to compel arbitration as effectively "a request for summary disposition of the issue of whether or not there ha[s] been a meeting of the minds on the agreement to arbitrate" (cleaned up)). "Under this standard, the party seeking to compel arbitration must first present 'evidence sufficient to demonstrate an enforceable agreement to arbitrate.'" *Fox v. Comput. World Servs. Corp.*, 920 F. Supp. 2d 90, 96 (D.D.C. 2013) (quoting *Hill v. Wackenhut Servs. Int'l.*, 865 F. Supp. 2d 84, 89 (D.D.C. 2012)). The burden then moves to the opposing party "to show that there is a genuine issue of material fact as to the making of the agreement[]" that would prevent the court from deciding the motion as a matter of law. *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 129 (D.D.C. 2013). To sustain its burden, the nonmoving party must do more than rely on "mere unsupported allegations or denials"; it must support its position with "affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 84–85 (D.D.C. 2016) (first citing Fed. R. Civ. P. 56(e); and then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Here, the Defendants contend that Ms. Early agreed to resolve her current claims before an arbitrator when she signed the arbitration agreement. Defs.' Mot. 5. They are correct. The

---

(refusing to "override" an arbitration agreement by deciding a motion to dismiss and instead construing and granting the motion as a motion to compel arbitration (cleaned up); *Skrynnikov v. Fed. Nat. Mortg. Ass'n*, 943 F. Supp. 2d 172, 179–80 (D.D.C. 2013) (declining to "override" an arbitration agreement by resolving under Rule 12(b)(6) a motion to dismiss under Rule 12(b)(6) and/or compel arbitration (cleaned up)); *see also Edmondson v. Lilliston Ford, Inc.*, 593 F. App'x 108, 111–12 (3d Cir. 2014) (holding that a district court erred in dismissing a motion to compel arbitration without prejudice to first resolve a pending motion to dismiss). Because the Court grants the Defendants' request to compel arbitration without reaching the Rule 12(b)(6) motion, it need not weigh in on that question.

agreement includes an "agree[ment] to resolve any and all claims, disputes, or controversies arising out of or relating in any way to [Ms. Early's] application for employment, [her] employment with ACE, and/or the termination of [her] employment, exclusively by arbitration." Arb. Agreement 1. That seems to resolve the matter.

In urging otherwise, Ms. Early claims that the arbitration agreement is invalid, because the Defendants "buried [it] in a fast onboarding portal" and she did not knowingly sign it. Pl.'s Opp'n 7. And she argues that the agreement is unconscionable because it was presented to her on a "take-it-or-leave-it basis" and it "limits discovery, restricts rights, and favors [ACE]." *Id*. The Court understands Ms. Early's frustrations regarding the circumstances under which she signed the arbitration agreement. But the agreement prevents the Court from deciding even those disputes. The agreement contains a "delegation provision," which states that "[t]he Arbitrator shall have authority to resolve any disputes concerning the formation, validity or enforceability of [the] Arbitration Agreement." Arb. Agreement 2; *see also Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 149 (D.D.C. 2017) ("A written agreement memorializing the parties' agreement to arbitrate the threshold question of arbitrability has come to be known as a 'delegation provision.'"). When a valid and enforceable delegation provision exists, "a court is prohibited from reaching the gateway question of arbitrability and must reserve that question for" the arbitrator. *Andresen*, 240 F. Supp. 3d at 149. In general, before sending a dispute to arbitration, the court must "consider any challenges to the validity of the delegation provision." *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 137 (D.D.C. 2015). But the Supreme Court has held that unless a party seeking to avoid an arbitration agreement "challenge[s] the delegation provision specifically," a court "must treat it as valid . . . and must enforce it . . . , leaving any challenge to

the validity of the [arbitration] [a]greement as a whole for the arbitrator." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

Ms. Early does not dispute the validity of the delegation provision. She makes only the challenges to the agreement discussed above. Because she does not "challenge[] the delegation provision specifically," the Court "must treat it as valid . . . and must enforce it . . . , leaving" her "challenge[s] to the validity of the [arbitration] [a]greement as a whole for the arbitrator." *Id.*; *see N-Bar Trade, Inc. v. Amazon.com Servs. LLC*, 807 F. Supp. 3d 11, 17 (D.D.C. 2025) (applying *Rent-A-Center* to channel unconscionability arguments to arbitration); *Cureton v. Duke*, 272 F. Supp. 3d 56, 62 (D.D.C. 2017) ("If the nonmoving party fails to proffer relevant evidence, the moving party may succeed on summary judgment."). Again, the Court recognizes that this may seem unfair to Ms. Early. But this Court's hands are tied. It must send her claims, including her challenges to the arbitration agreement, to an arbitrator.

Because the Court must submit the Parties' dispute to arbitration and the Defendants have requested a stay pending arbitration, *see* Defs.' Mot. 7, Section 3 of the FAA compels this Court to stay these proceedings pending the outcome of arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

**CONCLUSION**

For the foregoing reasons, the Court denies the Plaintiff's Opposition to Defendants' Notice of Removal, ECF No. 9, which the Court construes as a motion to remand; grants in part the Defendants' Motion to Dismiss the Complaint or, in the Alternative, to Compel Arbitration,

ECF No. 6; denies the Defendants' Motion to Strike, ECF No. 16; and stays this case pending the outcome of arbitration.

A separate order will issue.

_____

SPARKLE L. SOOKNANAN
United States District Judge

Date:   August 3, 2026